Filed 3/7/14  P. v. Guzman CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B244562 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA 121015) |
| v. | |
| JAIME GUZMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Torribio, Judge.  Affirmed.

Judith Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Defendant Jaime Guzman challenges his five convictions for sexual penetration of a child under 10. We affirm.

## FACTS AND PROCEDURE

B.M. testified that in July 2011, when she was eight years old, Mario Ortega babysat her and took her to defendant's apartment and defendant's girlfriend's house. B.M. saw defendant five days in a row. On Monday, defendant put his finger inside B.M.'s vagina, and it hurt her. Defendant also put his finger in her anus and asked her to lie down with him.

On Tuesday, defendant put his finger in B.M.'s vagina, hurting her. B.M. was upset and angry afterwards.

On Wednesday, defendant put his finger in B.M.'s vagina, again hurting her. B.M. had told Ortega she didn't want to go to defendant's apartment, but he took her there anyway. B.M. also told her mother that she did not want to go to defendant's apartment.

On Thursday defendant put his finger in B.M.'s vagina and touched her breasts. B.M. was upset, but Ortega did not notice her anger.

On Friday, defendant and B.M. went to defendant's girlfriend's home. B.M. was playing with dolls and watching a movie on television when defendant pulled down B.M.'s pajamas and put his finger inside her vagina. Defendant also kissed her buttocks and bit her on the left side of her buttocks. B.M. worried that she needed to be hospitalized for the pain she felt when defendant penetrated her vagina. B.M. was upset and angry when defendant touched her.

Defendant told B.M. not to tell anyone about his conduct.

In a tape-recorded interview, defendant admitted rubbing B.M.'s vagina. He admitted putting his hand inside her. He said it happened two times.

At trial, defendant denied touching B.M. or placing his finger in her vagina or anus. He testified that he lied during his pretrial interview because he was cold, tired, and afraid. Also according to defendant, prior to the interview, he had been interviewed by another officer who was verbally aggressive.

Defendant testified that Ortega and B.M. never visited him *inside* his apartment. They visited once in the evening, but did not enter the apartment. B.M. played *outside*. B.M. ran on the sidewalk and the street while defendant and Ortega talked. Defendant saw Ortega and B.M. a second time at the house where his girlfriend (who he referred to as his wife) lived. Defendant peered into the bedroom where B.M. played and slept but did not interact with her other than placing a blanket on top of her. Defendant testified he never fondled B.M. at his apartment or at his girlfriend's house.

During rebuttal, Ortega testified that he took B.M. to defendant's apartment and once to defendant's girlfriend's house. Defense counsel did not cross-examine Ortega.

Defendant was charged and convicted of five counts of sexual penetration with a child under 10 (Pen. Code, § 288.7, subd. (b)). The court sentenced defendant to consecutive prison terms of 15 years-to-life on counts one and two, and ordered the three remaining counts to run concurrently.

## DISCUSSION

Defendant argues that the court and the prosecutor committed misconduct, thereby prejudicing him. We find no judicial misconduct and no prejudicial prosecutorial misconduct.

### 1. Alleged Judicial Misconduct

When defendant testified, defense counsel elicited testimony that Ortega and B.M. visited defendant at his apartment but neither entered the apartment. According to defendant, defendant spoke to Ortega while B.M. ran on the sidewalk and the street. Counsel then asked whether B.M. was "running to a particular location" and whether the street "was . . . near . . . ." The court cut off the question of whether the street was near stating: "Counsel, we are getting into [an] awful lot of minutiae. Can we get to what we're here for? It's an awful lot of minutiae that's being developed here, so let's move it on."

Outside the presence of the jury, defense counsel argued that a mistrial was warranted because the court's statement diminished counsel's integrity and that by using

3

the term "minutiae," the court imposed an opinion on the type of evidence to be elicited.[1] Counsel explained that he was trying to show that B.M. did not enter defendant's apartment as she had testified. The court reversed itself and allowed counsel to continue his questioning during redirect. On redirect, counsel did not ask any further questions regarding the details of where B.M. played outside defendant's apartment.

On appeal, defendant argues that the court's statement that counsel was focusing on minutiae constituted judicial misconduct depriving defendant of his right to a fair trial. Defendant argues that the court suggested to jurors his "defense rested on trivia." Defendant further argues that "[t]he effect of characterizing the defense as trivia was to denigrate appellant's case by suggesting it was of minimal value and carried little weight."

Defendant's premise is incorrect. The court made no comment about defendant's defense or the evidence in the case. The court simply told counsel that the location of where B.M. played on the street was minutia not probative of any material issue. The court was correct. Counsel had elicited testimony that according to defendant, B.M. never entered her apartment. That was the critical evidence, which if credited would rebut B.M.'s testimony. Where B.M. played on the street was not probative of any material fact. Even after the court allowed defense counsel to further probe the issue, counsel did not ask any additional questions.

Similarly, defendant's argument that the court's comment impugned defense counsel's integrity is not supported by the record. The court made no comment about defense counsel and did not question counsel's integrity. The court simply questioned the need for identifying the specific place outside defendant's apartment where B.M. was playing. As noted, whether B.M. was in the yard, on the sidewalk, or on the street is irrelevant.

---

[1] Defendant did not forfeit the claim of error because he argued it in the trial court and moved for a mistrial.

4

The court has "both the duty and the discretion to control the conduct of the trial . . . ." (*People v. Blacksher* (2011) 52 Cal.4th 769, 824.) Here the court did nothing more than control the admission of irrelevant evidence.[2] The court did the same thing on numerous occasions with the prosecutor, belying defendant's suggestion that the court created the appearance of allying itself with the prosecution.[3] Defendant's argument that the court "cast[] the defense case as frivolous and weak in contrast to the prosecution's" has no basis in the record.

### 2. *Alleged Prosecutorial Misconduct*

Defendant argues that the prosecutor committed misconduct. "'The standards governing review of misconduct claims are settled. "A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such '"unfairness as to make the resulting conviction a denial of due process."' [Citations.] Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial." [Citation.] "In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for

---

[2] Defendant's reliance on cases in which the court commented on the defense is not helpful, because here the court did not comment on the defense. For example, defendant relies on *People v. Sturm* (2006) 37 Cal.4th 1218, 1231, in which the trial court told jurors that first degree murder was a "'gimme here.'" (Italics omitted.) In contrast to *Strum*, the court's request counsel move on cannot reasonably be understood as commentary on defendant's defense.

[3] The trial court sustained its own objection under Evidence Code section 352 to the prosecutor's question of B.M. whether she typically wore pajamas. The court asked the prosecutor to wrap up her questioning of B.M. When the prosecutor questioned the forensic nurse, the court told her "you can move on" three times. The court sustained its own objection to the prosecutor's efforts to introduce B.M.'s prior consistent statement when questioning a deputy sheriff. When the prosecutor questioned the detective who interviewed defendant, the court told the prosecutor to "get to the point." The court sustained its own objection to the prosecutor's question of the detective regarding why suspects minimize their conduct and asked the prosecutor to "move on."

5

review." [Citation.] When a claim of misconduct is based on the prosecutor's comments before the jury, "'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'" [Citation.]'" (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1275.)

*a. Alleged Prejudicial Misconduct in the Prosecutor's Closing Argument*

Additional background is necessary to analyze defendant's argument that the prosecutor committed misconduct when she argued that B.M. was angry and jurors also should be angry about defendant's conduct.

i. Background

During closing argument, the prosecutor argued: "You heard from [B.M.] and very reasonably so she is angry. Over and over again she said how angry she is. Is she faking that anger? Where would she come up with such an emotion like I'm angry. She's angry because she got violated. She should be angry and I'm angry." Defense counsel objected and the court sustained the objection. The prosecutor then argued "You should be angry" and the court sustained defense counsel's objection.

During his closing argument, defense counsel responded, "For the first two minutes or so of counsel's argument you'll notice it was designed to try to elicit all your emotions to try to get you angry, besides being improper." The court sustained an objection.

Defense counsel continued:

"It is something that should not even delve into your minds. These cases are really difficult. Sex cases are always difficult because of the nature of the case itself. Typically in these types of cases emotions run really high. Emotions with the victims, with family members and even emotions elicited by the prosecution. You yourself have probably felt some of that emotion. When emotions run really high, there's a real danger that you as jurors compromise your ability to be fair. There is a real danger that you'll allow those emotions to take over, to take over the ability to use reason and common sense.

"I'm asking you at this point in time, before you go back into that room to deliberate, to forget about those emotions. This is not a case about being emotional. This

is not a case where you should actually look and get angry about anything. You have to basically look at the facts and analytically approach the law and make a decision based on that, not based on emotion.

"This case is about being fair. It is not about the color of my client's skin or the language he speaks. It is not about the nature of the allegation or any unpleasantness that it might conjure up. [¶] . . . [¶]

"Certainly your job is not to convict my client simply because you feel an emotional bond to the victims or an emotional bond against my client. Your job is to be fair and just and consider all the evidence that was submitted to you."

ii. Analysis

"[A]n appeal for sympathy for the victim is out of place during an objective determination of guilt." (*People v. Stansbury* (1993) 4 Cal.4th 1017, 1057, overruled on another ground in *Stansbury v. California* (1994) 511 U.S. 318, 325-326; see also *People v. Vance* (2010) 188 Cal.App.4th 1182, 1198-1199.) The prosecutor should not have argued that the jurors should be angry. It "invited the jury to depart from their duty to view the evidence objectively, and instead to view the case through the eyes of the victim." (*People v. Fields* (1983) 35 Cal.3d 329, 362.) Respondent's argument that the prosecutor actually meant "one" should be angry instead of "you" should be angry is not helpful because even the argument that "one" should be angry constitutes an appeal for sympathy to the victim.

We need not decide whether the prosecutor's argument rose to the level of prosecutorial misconduct because, under the facts of this case the prosecutor's argument was harmless beyond a reasonable doubt. The evidence in this case was overwhelming. B.M. described the incidents of sexual penetration in detail distinguishing between each incident, and defendant admitted to two of the five incidents. Defendant's subsequent explanation that he was cold, tired, and afraid was not credible and would not have been rendered more credible had the prosecutor refrained from making the challenged argument. Defense counsel eloquently argued that the jurors should focus on the evidence in the case, not their emotions, and the court instructed jurors as follows: "Do

not let bias, sympathy, prejudice, or public opinion influence your decision." We must presume the jury followed its instructions. (*People v. Doolin* (2009) 45 Cal.4th 390, 445.) Thus, even assuming the argument constituted misconduct, it was not prejudicial and does not warrant reversal. (See *People v. Sanders* (1995) 11 Cal.4th 475, 527 [assumed misconduct in appealing to prejudices of jurors was not prejudicial].)

b.  *The Prosecutor's Rebuttal Argument*

Defendant's challenge to the prosecutor's rebuttal argument requires summarizing portions of defendant's closing argument and portions of rebuttal. During closing argument, defense counsel argued: "We know Mario [Ortega] doesn't hear my client say, 'lay down next to me.' Yet we do not have his testimony concerning that. No corroboration whatsoever about what happened. [¶] To accept [B.M.]'s version of the story, ladies and gentlemen, is to accept only one of two plausible conclusions: one, either Mario was a participant in the molestation, or, two, it just didn't happen. It didn't happen." Counsel continued: "[T]hink about it, ladies and gentlemen. . . . On two of those occasions when this was happening, we have a perfect witness sitting there who could corroborate what happened, but, yet, where is that witness testifying about this? It just did not happen."

In response to defense counsel's argument that Ortega, who was present during the abuse was not asked about it, the prosecutor argued that Ortega "was brought in here and, guess what, subject to cross-examination. Why didn't counsel cross-examine him on all the points he just raised? I brought him in. He was there. Counsel declined to ask a single question and is saying that he—we didn't elicit this information. He was a witness. Guess what? I get to ask direct and he gets to ask cross-exam. That's the system. Counsel didn't ask one single cross-examination question." Defense counsel objected and the court sustained the objection.

The prosecutor continued: "Why wasn't Mario [Ortega] brought in, in [his] case in chief? Well, I didn't know that the defendant was going [to] take the stand and lie. And like I said, that witness was brought in and made available to the defense for all the

8

questions he could have wanted to ask." Defense counsel objected and the court instructed the prosecutor to "[m]ove on."

After argument defense counsel moved for a mistrial claiming that the prosecutor was trying to shift the burden of proof to the defense. The court denied the motion. On appeal, defendant argues the prosecutor committed prejudicial misconduct warranting reversal. We disagree.

"[I]t is neither unusual nor improper to comment on the failure to call logical witnesses." (*People v. Gonzales, supra*, 54 Cal.4th at p. 1275.) The prosecutor's argument, which directly responded to defense counsel's argument, was a comment on the failure to call or question Ortega; it did not shift the burden of proof. (See *People v. Frye* (1998) 18 Cal.4th 894, 973, overruled on another ground in *People v. Doolin, supra*, 45 Cal.4th at p. 421, fn. 22.) Moreover, it directly responded to defense counsel's argument suggesting that the prosecution should have asked Ortega certain questions. Defendant demonstrates no misconduct from the prosecutor's rebuttal argument.

## DISPOSITION

The judgment is affirmed.


FLIER, J.

WE CONCUR:


RUBIN, Acting P. J.


GRIMES, J.